# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| TROTTER OVERHEAD DOOR, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-11-1348-HE |
| TROTTER DOORS, LLC., ET AL., | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Trotter Overhead Door, Inc. ("TOD") filed this action against Trotter Doors, LLC and Brenton Wayne Trotter, alleging trademark infringement and other claims under federal and state law. Specifically plaintiff alleges a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), violations of the Anticybersquatting Consumer Protection Act and the Oklahoma Deceptive Trade Practices Act, and unfair competition and trademark infringement under Oklahoma common law. Defendants counterclaimed, seeking the cancellation of plaintiff's federal trademark registration and asserting claims for violation of the Lanham Act (unfair competition/false advertising/false designation of origin) and the Oklahoma Deceptive Trade Practices Act. They later dismissed their counterclaims with prejudice.

Plaintiff has filed a motion to enforce a Release signed by defendants and a motion for partial summary judgment. Defendants also have moved for summary judgment, which is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute as to a material fact 'exists when the evidence, construed in the light most

favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party.'" Carter v. Pathfinder Energy Services, Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quoting Zwygart v. Bd. of Cnty. Comm'rs, 483 F.3d 1086, 1090 (10th Cir.2007)). Having considered the submissions of the parties in light of this standard, the court concludes plaintiff's motion and defendants' motion, with one exception, should be denied.

## Background

Gene and Wilma Trotter started a garage door business in the mid-1960's, which was incorporated as Automatic Garage Door, Inc. ("AGD") in 1969. They operated their business under that name or slight variations of it, but included the Trotter name in their ads in various ways. Initially AGD's ads included "Gene Trotter - owner." Beginning in 1979 they included a logo of a trotting horse in front of a garage door with "THE TROTTER FAMILY" overlaid on the horse ("horse logo" or "horse mark"). Ads run in 1983 had, in addition to the horse logo, "TROTTER FAMILY" written across the side and top of the ad.[1] Their ad run in the 1984/85 Southwestern Bell Oklahoma City phone book identified the business as "Automatic Garage Door Inc. by the Trotter Family."

In 1983 Jesse Trotter, one of Gene and Wilma's four sons, and his wife, Tina, decided

---

[1] *An ad run in 1985/85 refers to both AGD and Trotter Overhead Door and lists the business addresses of both AGD and plaintiff. Plaintiff offered uncontroverted evidence that this was a joint ad. Plaintiff's Fact. #8. Defendants did not controvert this with their response. See Doc. #89, p. 8, ¶8. Page references for briefs and exhibits are to the CM/ECF page number. For example, Exhibit 2 to plaintiff's motion for partial summary judgment is referred to as Doc. #66-2.*

to start their own garage door business in Edmond. With Gene's consent they began operating as Automatic Garage Door of Edmond and incorporated under that name.[2] They changed the name to Trotter Overhead Door, Inc. the next year because they were having trouble obtaining credit as a result of AGD's poor credit history.

TOD was the first business entity in the state to use the name "Trotter Overhead Door." Plaintiff asserts that, since 1984, it has operated continuously under that name.[3] Plaintiff also claims it was the first company to use "Trotter" as part of its business name in conjunction with garage door sales and services in Oklahoma. Defendants dispute this, asserting that, regardless of the name under which Gene and Wilma Trotter incorporated their business, they used the name "Trotter" and "'everyone knew' Gene and Wilma's overhead garage door business as 'Trotter.'" Doc. #89, p. 7, ¶3(c). Defendants contend that "Automatic Garage Door, Inc. has always used the Trotter name in connection with the sale, installation and service of overhead garage doors." *Id*. at p. 6, ¶3. TOD began to use the horse logo in 1984 and in 1985 began using the slogan "A Family Business Doing Business

---

[2]*The court has referred to the various members of the Trotter family by their first names to distinguish among them.*

[3]*Defendants challenge plaintiff's claim of continuous use of the Trotter Overhead Door mark by pointing to ads plaintiff has recently run that place the word "Jesse" above Trotter Overhead Door and to the sign in front of plaintiff's storefront which reads "Jesse Trotter Overhead Door." Jesse Trotter testified plaintiff included the word Jesse to distinguish itself from defendant TD. The court is not persuaded that the inclusion of "Jesse" precludes plaintiff's infringement claim and defendants do not argue otherwise in the discussion sections of any of their briefs.*

with Families."[4]

Substantial good will is associated with the TOD mark,[5] which was registered as a federal trademark on September 6, 2011. TOD registered the mark with the Oklahoma Secretary of State on October 20, 2010. TOD maintains a website, trotteroverhead.com, on which internet users can obtain product, service and contact information.

AGD was facing the prospect of bankruptcy in 1987. Plaintiff claims Billy Trotter, one of Gene and Wilma's sons who was managing AGD at that time, approached Jesse and asked if their parents could use the Trotter Overhead Door name in connection with a new garage door business. Jesse testified that he agreed, acting on behalf of TOD, to grant Gene and Wilma an oral licence to use the Trotter Overhead Door name, but imposed certain conditions – the new company had to sell the brands TOD carried, had to purchase its product line through Jesse, and had to obtain his approval for all ads. Defendants deny that a license for the use of the TOD mark was ever requested or granted.

Both plaintiff and Gene and Wilma's companies[6] used the business name "Trotter

---

[4]*Although plaintiff discusses the horse logo, a drawing of a broken spring with a tagline and the phrase "Fast Service/Free Estimates/Fair Prices" in its motion, plaintiff's trademark infringement claims are based on the TOD mark and the A Family Business Doing Business with Families Since 1983 slogan ("Family Doing Business mark"). Complaint, Doc. #1, p. 1. Defendant's argument regarding the typographical error in the complaint, see Doc. #74, p. 25 and note 4, borders on being specious.*

[5]*Defendants dispute this, citing their response to plaintiff's Fact #7, but that is neither responsive to plaintiff's fact statement nor does it counter plaintiff's evidence.*

[6]*Gene and Wilma separately incorporated companies in 1987, Trotter Automatic Garage Door, Inc. and Trotter Overhead Garage Door, Inc. of Oklahoma City. They had separate physical locations, but advertised together as Trotter Overhead Door. By 1988 Gene and Wilma had only one business location.*

4

Overhead Door" for approximately the next 20 years. Plaintiff claims it exercised quality control over Gene and Wilma's use of the TOD mark. As noted previously, defendants deny there was a license. They also deny plaintiff maintained quality control over the use of the mark or the services Gene and Wilma provided while operating as "Trotter Overhead Door."

Around 2006 Gene and Wilma's business began to decline and plaintiff asserts that in late 2007 or early 2008 it revoked the oral license, that Jesse told Gene and Wilma that they could no longer use the Trotter Overhead Door name in connection with their business. Defendants dispute this. Brent Trotter testified that the business he purchased from his grandparents was using the name Trotter Overhead Door, though he did acknowledge that the business' legal names were Trotter Automatic Garage Door and Trotter Overhead Garage Door of Oklahoma City. Gene and Wilma then began to advertise as Automatic Garage Door and use that name in their telephone listings. However, in 2008/2009 they placed an ad for "Automatic Garage Door, LLC as Trotter Overhead Door," and telephone book listings continued to exist under both "Automatic Garage Door" and "Trotter Overhead Door" for Gene and Wilma's business. Plaintiff assert those ads were placed without its knowledge or consent. Gene and Wilma's company continued to have financial difficulties.

In February 2009 defendant Brent Trotter, who had worked for TOD for approximately 15 years, formed defendant Trotter Doors LLC. He selected that name "because the 'Trotter name ha[s] value in the industry.'" Doc. #89, p. 14, ¶ 29(b). The previous year Brent had approached his grandparents, Gene and Wilma. with the intent, defendants assert, to buy their ongoing garage door business. Plaintiff claims Brent just

5

sought to buy the telephone numbers Gene and Wilma had used in connection with their business. In conjunction with the sale, on March 23, 2009, Gene and Wilma executed a Purchase and Sale Agreement and a Warranty Bill of Sale. The sale agreement stated that it was between Trotter Automatic Garage Door, Inc. and Trotter Doors, LLC and was for the sale of personal property, specifically five telephone numbers. The agreement does not refer to Trotter Overhead Door or the sale of stock, trademarks or assets other than the telephone numbers.

The parties disagree as to the discussion between Jesse and Brent when Brent resigned from TOD in March 2009 and told Jesse he was starting a new business. Jesse claims that Brent told him he had not decided on a name for his new company and that he told Brent not to use a name similar to TOD. Brent denies that Jesse instructed him not to call his business anything like Trotter Overhead Door.

For the first few months TD was in business, it operated as Trotter Overhead Door. Brent then changed the company name to Trotter Doors LLC. As soon as he started the business TD engaged in a print and advertising campaign. Some of the ads contained text and photos substantially similar to those used by TOD, though TD claims the publishers prepared them. Defendants admit there has been substantial confusion among consumers between plaintiff and defendant TD.[7]

---

[7]*Defendants contend the confusion is similar to that which has always existed between plaintiff's and Gene and Wilma Trotter's overhead garage door businesses. The evidence they cite to demonstrate the asserted prior confusion consists of Brent's response, when asked if TD's name created confusion between it and TOD: " No more than what it always has." Doc. #89-6, p. 37. That is insufficient to demonstrate that the confusion documented by plaintiff and admitted by*

On January 12, 2009, Brent acquired the domain name www.trotterdoors.com. and embedded metatags including the terms "trotter," "trotter overhead," and "trotter overhead door" into the trotterdoors.com. website. TD also purchased approximately 1900 Google keywords so that the TOD website would show up as an online ad when someone used the term "Trotter Overhead Door" in a search engine query. In 2009 and 2010 Brent registered fifteen internet domain names: "trotteroverheaddoor" (with .com,.net, and .org extensions); "trotteroverheaddoors" (with .com, .net, and .org extensions); "jessetrotteroverheaddoor.com;" "jessetrotteroverheaddoors.com;" "trotterohd.com;"[8] "trotterdoor.com;" "trotterdoor.net;" "trotterdoor.org;" "trotterdoors. com;" "trotterdoors.net;" and "trotterdoors.org." Brent stated that he initially registered the domain names "in order to protect and preserve the Trotter family surname as well as that of Trotter Automatic Garage Door, Inc. d/b/a 'Trotter Overhead Door.'" Doc. #69-6, p. 5. Brent "parked," or did not display any content on most of the names other than "trotterdoor.com," "trotterdoors.com" and for a short period, "trotteroverheaddoor.com." He has transferred nine of the domain names to TOD.[9]

## Discussion

---

*defendants, see plaintiff's fact nos. 39-41, 43-46, is the same as that which defendants claim existed before.*

[8]*One of the domain names, trotterohd.com, was registered in 2007.*

[9]*Defendants object in their response to plaintiff's reliance on certain exhibits, which they assert cannot be considered as they are unauthenticated. Plaintiff has resolved any admissibility problems with those exhibits with the affidavit of Nathan Trotter attached to its reply brief.*

7

Plaintiff's motion to enforce Release

On January 22, 2013, the parties executed a Release and Settlement Agreement." Doc. #93-1. The court concludes, based in large part on ¶ 11 of the agreement, that defendants did not relinquish their defenses to plaintiff's claims by executing the Release.[10] Accordingly, plaintiff's motion to enforce the Release [Doc. #93] will be denied.

Trademark Infringement[11]

To establish its trademark infringement claim, plaintiff must show that the TOD mark is protectable and that "defendant[s]' use of [an identical or similar] mark is likely to cause confusion among consumers." Donchez v. Coors Brewing Co., 392 F.3d 1211, 1215 (10th Cir. 2004) (internal quotations omitted). Defendants admit that their use of the TD mark has caused confusion among consumers regarding the source and origin of the goods or services sold by TD, but deny that plaintiff's mark is protectable. They contend plaintiff was not the first user of the TOD mark and that, because a "separate competing entity operated by Gene and Wilma Trotter simultaneously used the TOD Mark for twenty-two years," Doc. #74, p.

---

[10]*The court finds it unnecessary for purposes of resolving the pending motions to determine the extent of the Release. Its decision is limited to the conclusion that defendants did not give up their right to assert their defenses to plaintiff's claims.*

[11]*The parties do not distinguish between plaintiff's federal and common law trademark infringement claims. The court's conclusions as to the alleged infringement apply to both. See Donchez v. Coors Brewing Co., 392 F.3d 1211, 1219 (10th Cir. 2004) ("The elements of common law trademark or service mark infringement are similar to those required to prove unfair competition under § 43(a) of the Lanham Act.).*

8

19, plaintiff abandoned the mark and cannot establish that it has secondary meaning.[12]

This case essentially hinges on whether plaintiff granted Gene and Wilma a license to use the TOD mark.[13] Plaintiff has offered evidence demonstrating that it granted Gene and Wilma a license and exercised reasonable quality control over it, and that its mark has secondary meaning.[14] However, plaintiff's proof on these issues, while substantial, is not conclusive. Defendants have offered <u>barely</u> enough evidence to create a justiciable question as to whether plaintiff granted Gene and Wilma a license and exercised adequate control over its licensee, so as to preclude plaintiff from prevailing at the summary judgment stage on its trademark infringement claim.

In addition to asserting that no license was ever sought or granted, defendants make the additional argument that, regardless of whether a license existed, plaintiff's claims fail because Gene and Wilma's company, not plaintiff, was the first user of the TOD mark. However, their evidence as to this defense is insufficient. Even if defendants can prove that

---

[12]*Defendants based their argument that the TOD mark does not have secondary meaning solely on the competing company's asserted independent use of the TOD mark from 1987 to 2009. See Doc. #89, p. 24.*

[13]*Insofar as the Family Doing Business mark is concerned, neither party devotes much discussion to it. Plaintiff has offered evidence that it was included in the license it allegedly gave to Gene and Wilma. Doc. #67-5, p. 3. Defendants rely on the slogan's appearance in ads placed during the term of the alleged license to show its use by Gene and Wilma's business. They do not claim prior use by Gene and Wilma. Doc. #74, p. 10, ¶16. The court's discussion, except on the issue of priority, will pertain to both marks.*

[14]*The court does not have to determine whether the TOD mark is inherently distinctive, as plaintiff has offered evidence demonstrating that its mark has acquired secondary meaning. The court did not consider the presumption resulting from the mark's registration or the effect of plaintiff's asserted noncompliance with LCvR.3.6.*

no license existed and that Brent purchased more than just phone numbers, there is no evidence in the record that Gene and Wilma used the mark "Trotter Overhead Door" before 1987. Their prior ads did include "Gene Trotter - owner" or, occasionally, "The Trotter Family" banner, but that is not enough to demonstrate that Gene and Wilma were using "their surname 'Trotter' as a trademark to identify the business . . . ." Doc. #74, p. 8.

"Not every single word, phrase, design or picture that appears on a label or in an advertisement qualifies as a protectable mark or trade dress." 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:3 (4th ed.2004). *See id.* at § 3.6 ("[T]he primary function of a trademark is to identify and distinguish goods . . . ."). The fact that Automatic Garage Door may have been generally known as the Trotter business does not mean that the company had priority in the use of the Trotter name for purposes of trademark law.[15] Wilma and Gene never registered "Trotter" and defendants have not shown that it was even a protectable mark. *See generally* Donchez, 392 F.3d at 1217 (Because plaintiff, who was suing for trademark infringement, had "never registered the term with the United States Patent and Trademark Office, it [was] his burden to demonstrate that it is protectable under § 43(a) [of the Lanham Act].").

To the extent defendants attempt to prove Gene and Wilma's priority in the TOD

---

[15]*The evidence defendants offer to demonstrate that Gene and Wilma "used their surname 'Trotter' as a trademark to identify the business as long as they can remember and that is how everyone knew them," Doc. #74, p. 8, ¶3, consists solely of the deposition testimony of Gene and Wilma. See Doc. #74-2, depo. p. 10, Doc. #74-1, depo. p. 1. It is conclusory and inadequate to demonstrate their prior use of "Trotter" as a trademark. In this regard, defendants have not supported their claim of first use with sufficient legal argument. See Doc. #74, p. 8, ¶3; p. 20; Doc. #89, p. 22.*

mark based on AGD's use of the horse logo, that argument also fails, in part because of its lack of development. Defendants neither discuss how, nor cite any authority demonstrating that, Gene and Wilma's use of The Trotter Family horse logo translates into prior use of the word "Trotter." Defendants simply refer to the trotting horse mark, after making the statement that "[p]laintiff's own Motion makes clear that it was not the first user of the Trotter name in connection with the sale, installation and service of overhead garage doors and their related parts."[16] Doc. #89, p. 22. Moreover, as plaintiff argues, defendants' priority theory appears to improperly depend "on viewing the TOD mark not as a whole but as if the only word of interest is 'Trotter.'" Doc. #95, p. 6. *See generally* First Sav. Bank, F.S.B. v. First Bank Sys., Inc., 101 F.3d 645, 653 (10th Cir. 1996) ("While the dominant portion is given greater weight, each mark still must be considered as a whole.").

As a fact dispute, albeit marginal, exists regarding whether plaintiff granted Gene and Wilma Trotter a license to use the TOD and Family Doing Business marks, plaintiff's and defendants' motions will be denied on plaintiff's infringement claims.[17]

Cybersquatting

Among the elements plaintiff must establish to prevail on its cybersquatting claim is

---

[16]*As the court has discounted this argument, it does not have to consider whether, as TOD asserts, Gene and Wilma abandoned the horse mark.*

[17]*In their motion defendants also assert that, even if there was an offer and acceptance, the license was invalid for lack of consideration and because it violated the statute of frauds. Evidence that Gene and Wilma's company was to purchase its products from plaintiff at a small profit is sufficient to demonstrate consideration for the license. As the license apparently could be terminated at any time by either party it is not within the statute of frauds. See* Gens v. Casady School, *177 P.3d 565, 569-70 (Okla. 2008).*

11

ownership of a valid, protectable trademark. *See* 15 U.S.C. § 1125(d)(1)(A). The same fact issues discussed in conjunction with plaintiff's infringement claim, preclude summary judgment in plaintiff's favor on its cybersquatting claim.

Plaintiff concedes its cybersquatting claim fails with respect to the trotterdoorandtrim.com domain. As for the remaining domains, defendants are not entitled to summary judgment with respect to the nine domains that Brent offered to transfer to plaintiff. Cybersquatting occurs upon registration coupled with bad faith intent to profit. *Id.* Defendants offer no authority for their argument that they are absolved from liability because Brent, after registration, offered to transfer the domains voluntarily to plaintiff or that plaintiff refused to accept the transfer until after the lawsuit was filed.

As for the other domains, fact questions exist both as to whether they are confusingly similar to plaintiff's mark and with respect to the intent with which Brent Trotter acted.

Plaintiff's motion with respect to its cybersquatting claim will be denied. Defendants' motion also will be denied as to all but the trotterdoorandtrim.com domain name.

Deceptive Trade Practices[18]

Plaintiff's success on its claim asserted under the Oklahoma Deceptive Trade Practices Act is largely dependent on its ability to establish its infringement claim. Therefore,

---

[18]*Defendants neglected to address this claim in their response to plaintiff's motion for partial summary judgment, but it will not be deemed confessed as it was discussed in their motion for summary judgment.*

summary judgment in either plaintiff's or defendants' favor is precluded by the existence of factual disputes. While plaintiff asserts in its response to defendants' motion that its trademark infringement and deceptive practices claims are not coextensive, Doc. #90, p. 18 n.10, it has not distinguished the factual bases for the two claims sufficiently for the court to grant summary judgment on some, but not all, of the alleged wrongful conduct. Consequently, both plaintiff's and defendants motions on this claim will be denied.[19]

## Conclusion

The court has serious doubts regarding defendants' ability to establish its defenses to plaintiff's claims. Nonetheless, they have managed to create enough factual issues regarding the existence of a license and plaintiff's exercise of quality control over it to preclude partial summary judgment in plaintiff's favor. Accordingly, plaintiff's motion for partial summary judgment [Doc. #66] is **DENIED**. Defendants' motion for summary judgment [Doc. #74] is **DENIED** as to all but plaintiff's cybersquatting claim on the trotterdoorandtrim.com domain. Judgment as to that claim will be entered when the case is concluded as to all claims and parties. Plaintiff's motion to enforce settlement agreement [Doc. #93] also is DENIED.

**IT IS SO ORDERED**.

Dated this 27th day of June, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[19]*In a footnote in their reply, defendants assert that Trotter Doors, LLC is entitled to summary judgment on plaintiff's cybersquatting claim because plaintiff has not shown that the company, as opposed to Brent, registered any of the domains. That may well be. However, as plaintiff did not have the opportunity to address that issue, the court will not consider it.*